***********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Stanback, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement dated April 19, 2002, as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina. Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. The carrier on the claim is Travelers Indemnity Company of Illinois.
4. Plaintiff's average weekly wage is $437.41, with a compensation rate of $291.62.
5. Plaintiff continued to receive her full salary through March 11, 2001.
6. The alleged date of injury is December 15, 2000.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The plaintiff was 32 years old at the time of the hearing before the Deputy Commissioner. She began working for defendant Merrill Lynch on May 15, 2000, as a client associate. Plaintiff's job was to assist the financial consultants in the office, including George Hartzman. Her job duties required use of a computer throughout most of the day. Plaintiff's supervisor was Janet Conti.
2. On December 15, 2000, the office was having computer problems. Plaintiff had to reboot her computer several times and received a message to call a computer consultant. She made the phone call from her desk, which was located in a cubicle. The tower of the computer was underneath the desk, and could be reached by plaintiff while seated in her chair.
3. While plaintiff attempted to contact a computer consultant by phone, Mr. Hartzman yelled for her to call Janet Conti and reboot her computer. Mr. Hartzman then came into plaintiff's work area and pushed her chair back in order to access her computer's tower. Because plaintiff had been sitting on the edge of the chair and leaning forward, she slid off the chair and onto the floor. Plaintiff put her hands on the desk to keep her face from hitting it. She landed on the floor on her buttocks, and plaintiff felt a sharp pain in her back that went immediately into her right groin area.
4. Plaintiff reported to Ms. Conti that she had fallen on the floor and that her back hurt. Ms. Conti indicated she would speak with Mr. Hartzman. Plaintiff returned to her work duties. Mr. Hartzman later came to plaintiff's desk and gave her a restaurant gift certificate with an attached note saying that he was sorry he had "freaked out."
5. As plaintiff continued to work on December 15, 2000, she started having pain down her right leg into her foot, making it harder for her to walk or sit. Prior to that date, plaintiff could sit comfortably at her desk to work, and had not experienced any pain going down her leg. However, plaintiff had started having some back pain during November 2000 and had made an appointment to see Phillips John Carter, M.D., a board-certified orthopedic surgeon. Prior to the fall at work, plaintiff had felt it was harder than normal to walk, but she had not been having the problems she developed that day.
6. On the following Thursday, December 21, 2000, plaintiff went to her previously scheduled appointment with Dr. Carter. Up until that point, she had been going to work. Because she no longer could drive due to her pain, plaintiff had been riding to work with a co-worker. By that time, she could barely sit or walk.
7. At the initial appointment with Dr. Carter, plaintiff told him that her back had been bothering her since November, and that the pain began to go down her leg after she fell. Dr. Carter's initial impression was "a little degenerative disk going on here with aggravation of facet arthropathy."
8. After the appointment with Dr. Carter, plaintiff returned to work for one day but was not able to complete a full day because of the pain in her back. She told Ms. Conti that she was in a lot of pain and was having trouble working. Ms. Conti asked her to write down a description of what had happened to her on the date of injury. Plaintiff mailed a statement as requested. A few months later, Ms. Conti asked plaintiff to write another statement, so she sent a second one to Ms. Conti in May 2001. The written statements described the circumstances surrounding plaintiff's injury of December 15, 2000.
9. After plaintiff's initial appointment with Dr. Carter on December 21, 2000, plaintiff underwent both an MRI and a myelogram. These tests showed a bulging disk pressing on the L5 nerve root. Dr. Carter recommended a course of steroid injections and then, after obtaining a second opinion, performed surgery on April 4, 2001. The surgery addressed both her bulging disk and the facet arthropathy.
10. After the surgery, plaintiff did not improve as Dr. Carter had expected. He then recommended a consultation with a neurologist to see if she had a muscular disorder. At the time of the deposition, plaintiff was still receiving physical therapy. Dr. Carter has kept plaintiff out of work since her initial visit with him.
11. In Dr. Carter's opinion, the fall plaintiff sustained on December 15, 2000, could or might have caused plaintiff's back condition. Dr. Carter opined that the bulges in plaintiff's discs at L4-5 and L5-S1 as well as her degenerative disk disease probably preexisted December 15, 2000, however, the fall aggravated these conditions. The Full Commission finds as fact that the December 15, 2000, incident at work caused the problems for which plaintiff received medical attention and aggravated her degenerative disk disease.
12. At the time of the hearing before the Deputy Commissioner, plaintiff could not walk without crutches because of problems balancing. She described difficulty rolling over in bed and sliding from one chair to the other. Plaintiff reported feeling that her muscles did not work well anymore. She was attending physical therapy twice a week for forty-five minutes. Plaintiff only tried driving again approximately one week prior to the hearing before the Deputy Commissioner, but drove for only about five minutes. The longest plaintiff could sit comfortably was two and a half to three hours. After about fifteen to twenty minutes of standing, plaintiff felt numbness. She experienced daily pain in her back. Plaintiff has received no short- or long-term disability payments in association with her injuries.
13. At the hearing, Janet Conti testified that plaintiff specifically denied having fallen on December 15, 2000, and Mr. Hartzman testified that plaintiff had not fallen. Greater weight is assigned to plaintiff's testimony as to the incident that occurred on December 15, 2001.
14. As of the date of the hearing before the Deputy Commissioner, plaintiff has not yet reached maximum medical improvement, and as a result of her injuries of December 15, 2000, the plaintiff has been unable to earn wages in any employment since December 21, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 15, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, which resulted in an injury to her back. N.C. Gen. Stat. § 97-2(6).
2. As a result of the December 15, 2000, injury by accident and resulting back injury, plaintiff was and has been temporarily and totally disabled from December 21, 2000, through the present and is entitled to compensation at the rate of $291.62 per week from December 21, 2000, and continuing until such time as she returns to work at her pre-injury wages or until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment by the defendants for medical treatment necessary to effect a cure, provide relief, or lessen the period of plaintiff's disability related to the December 15, 2000, injury by accident, including compensation for past and future medical treatment of her back. N.C. Gen. Stat. § 97-25.
4. Defendants are entitled to a credit for the full salary payments made to plaintiff through March 11, 2001. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorneys' fee approved herein, defendants shall pay temporary total disability compensation to plaintiff at the rate of $291.62 per week from December 21, 2000, through the present and continuing until such time as she returns to work at her pre-injury wages or until further Order of the Industrial Commission. The portion of this compensation that has accrued shall be paid in one lump sum to plaintiff. Defendants may deduct from the sums due plaintiff any full salary payments made to plaintiff through March 11, 2001.
2. Defendants shall pay all medical compensation arising from this injury by accident.
3. Defendant shall pay to plaintiff's counsel a reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph 1 of this AWARD. Twenty-five percent (25%) of the lump sum due plaintiff shall be deducted from said sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
This 17th day of November 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER